IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTELA GUADALUPE CARDENAS OLMOS, | § § § | |
| Plaintiff, | § § § | |
| VS. | § § | Civil Action No. 3:22-CV-0077-D |
| DAVID B. GILES P.C. and DAVID B. GILES, JR., | § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Estela Guadalupe Cardenas Olmos ("Olmos") sues defendants David B. Giles, P.C. ("Giles P.C.") and David B. Giles, Jr., Esquire ("Giles") (collectively, defendants unless context indicates otherwise), alleging claims for legal malpractice, breach of fiduciary duty, and fraudulent misrepresentation. Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Olmos opposes the motion in part and requests, in the alternative, leave to amend. For the reasons that follow, the court grants in part and denies in part defendants' motion to dismiss, and it also grants Olmos leave to amend.

I

In January 2021 Sherry Hand ("Hand"), the Chief Executive Officer of A Symmetry Company International LLC, presented Olmos an investment opportunity with Titan Black

LLC d/b/a/ Astute Trust ("Astute Trust").[1]  The investment opportunity was outlined in a Joint Participation Project Funding and Asset Management Agreement ("JPA"), which Olmos signed.  Astute Trust's managing partner signed the JPA on behalf of Astute Trust.

The JPA instructed that Olmos should transfer the sum of $500,000 to the Interest on Lawyer's Trust Account ("IOLTA") of Henri M. Cosey, Esquire ("Cosey").  Olmos attempted to make the transfer, but Cosey's IOLTA account was frozen.  Hand and Robert Shambora ("Shambora") then requested that Olmos transfer the funds to defendants' IOLTA account.  Olmos transferred $1,000 and then $499,999.00 to defendants' IOLTA account.  Olmos alleges that she placed the funds in defendants' IOLTA account with the understanding that defendants would be handling the distribution of her funds on her behalf in connection with the investment.  She also alleges that the transfer of the funds created an attorney-client and a fiduciary relationship between herself and defendants.

In March 2021 Olmos sought to end her participation in the investment. Hand provided Olmos documentation confirming her request to leave the investment program and informed Olmos that her investment would be returned to her.  But Olmos did not receive her returned investment.  Instead, according to Olmos, defendants distributed her funds to themselves and third parties, without notifying her or receiving her permission.

Olmos then filed this lawsuit, alleging claims for legal malpractice, breach of

---

[1] In deciding defendants' Rule 12(b)(6) motion, the court construes Olmos' complaint in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Olmos' favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

fiduciary duty, and fraudulent misrepresentation. Defendants move to dismiss Olmos' action, contending, *inter alia*, that the attorney immunity doctrine bars Olmos' claims because they represented Shambora, who was an adverse party to Olmos in the transaction, not Olmos. Olmos opposes the motion in part.[2] The court is deciding the motion on the briefs.

II

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of Olmos' complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motion to dismiss, Olmos must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[2]After reviewing defendants' motion to dismiss, Olmos agrees to voluntarily dismiss her legal malpractice claim without prejudice. The court therefore dismisses Olmos' legal malpractice claim without prejudice.

- 3 -

possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III

The court begins with defendants' argument that Olmos' complaint should be dismissed because all claims against them are barred by the attorney immunity doctrine.

### A

Under Texas law, attorney immunity is a "comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration . . . that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd)). "The attorney immunity doctrine 'recognizes that [i]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own personal exposure against his client's best interest.'" *Rhodes Colls., Inc. v. Johnson*, 2012 WL 627273, at *3 (N.D. Tex. Feb. 27, 2012) (Fitzwater, C.J.) (alteration in original) (internal quotation marks omitted) (quoting *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at *2 (Tex. App. July 29, 2008, no pet.) (mem. op.)).

Attorney immunity applies

> when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney *and* (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable.

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021) (emphasis in original). "Whether the defense applies depends on whether the claim is based on this '*kind*' of conduct, not on the nature of the conduct's alleged wrongfulness." *Id.* (emphasis in original); *see also Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 765 (5th Cir. 2019) (explaining that attorney immunity does not extend to actions that "do 'not involve the provision of legal services and would thus fall outside the scope of client representation'" (quoting *Cantey Hanger*, 467 S.W.3d at 482)).

"[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense." *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017). To succeed on the defense of attorney immunity on a Rule 12(b)(6) motion, it must be apparent on the face of the complaint that the alleged conduct is within the scope of attorney immunity. *Id.* at 374; *Ironshore Eur.*, 912 F.3d at 763 ("Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." (alteration in original) (quotation omitted)).

B

Defendants contend that they are entitled to attorney immunity because they represented Shambora—a party adverse to Olmos—in the investment, and they never had contact with Olmos before she deposited money into the IOLTA account. Olmos responds that defendants were acting as escrow agents for a third-party and, although they were directed by Shambora, they have failed to demonstrate that they represented Shambora in the transaction.

The court holds that defendants cannot obtain dismissal at the Rule 12(b)(6) stage based on attorney immunity because this affirmative defense is not sufficiently apparent from the face of Olmos' complaint. It is not clear from Olmos' complaint what was the scope of defendants' representation either of Shambora or Olmos, and it is likewise unclear whether Shambora was an adverse party to Olmos in the transaction. Olmos alleges that defendants did not disclose any purported attorney-client relationship between themselves and Shambora. Rather, according to her complaint, she "underst[ood] that Defendants would be handling the distribution of the Funds on her behalf in connection with the transaction." Compl. ¶ 18. Additionally, Olmos does not allege any details about the terms of the JPA, such as whether Shambora was a party to the JPA or whether the JPA designated defendants as escrow agents for the transaction. Thus it is unclear both who defendants represented in this transaction, and, assuming they represented Shambora, whether this representation occurred in an adversarial context such that Olmos' reliance on defendants was not justifiable. Because defendants' entitlement to the affirmative defense of attorney immunity

is not clear from the face of Olmos' complaint, the court cannot dismiss at the Rule 12(b)(6) stage.³

Because defendants' sole argument with respect to Olmos' fraudulent misrepresentation claim is that it is barred by attorney immunity, the court denies defendants' motion to dismiss with respect to this claim.

IV

The court turns next to Olmos' claim for breach of fiduciary duty.

A

Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App. 2010, no pet.)).

Texas law recognizes both formal and informal fiduciary relationships. "[A] formal fiduciary relationship, 'arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App. 2003, no pet.)). "[A]n informal fiduciary relationship, 'may

---

³The court takes no position on the merits of this defense with respect to future motions, such as a motion for summary judgment.

arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one.'" *Id.* (quoting *Jones v. Blume*, 196 S.W.3d 440, 449 (Tex. App. 2006, pet. denied)). "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998)).

B

Defendants contend that Olmos has failed to state a claim for breach of fiduciary duty because her allegations that she placed money into Giles's IOLTA account and relied on him to handle the distribution on her behalf are insufficient to create a fiduciary duty. The court agrees with defendants that Olmos has failed to plead a plausible claim for breach of fiduciary duty because her allegations do not allow the court to reasonably infer that either a formal or an informal fiduciary relationship existed between the parties.

With respect to an informal fiduciary relationship, Olmos has not alleged that she had any pre-existing relationship with defendants. And absent any allegations that a relationship existed between Olmos and defendants prior to and apart from the transaction that gave rise to the instant suit, Olmos has not plausibly alleged that she had an informal fiduciary relationship with defendants. *See Aubrey v. Barlin*, 159 F.Supp.3d 752, 761 (W.D. Tex. 2016) ("Texas courts very consistently require that a special relationship of trust and confidence must exist *prior to* and *apart from* the agreement that formed the basis of the

suit." (emphasis in original)); *N. Tex. Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F.Supp.3d 620, 637 (N.D. Tex. 2015) (Solis, C.J.) (finding that plaintiff failed to plausibly allege a breach of fiduciary duty claim where "[n]othing in the complaint suggests that [plaintiff] had any sort of relationship with Defendants outside of this business relationship"). Moreover, any subjective trust that Olmos may have placed in defendants to handle her investment appropriately is insufficient to transform their transaction into a fiduciary relationship. *See Town N. Bank, N.A. v. Shay Fin. Servs., Inc.*, 2014 WL 4851558, at *27 (N.D. Tex. Sept. 30, 2014) (Lindsay, J.) ("[A]ny subjective trust that Town North may have had in Shay is insufficient to transform their business relationship into a fiduciary relationship."); *Douglass v. Beakley*, 900 F.Supp.2d 736, 751 (N.D. Tex. 2012) (Boyle, J.) ("Further, neither subjective trust alone nor 'the fact that the relationship has been a cordial one, of long duration' necessarily transforms a relationship into a fiduciary relationship." (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App. 1997, pet. denied))).

 Likewise, Olmos has not alleged facts that support the reasonable inference that a formal fiduciary relationship existed between herself and defendants. Olmos alleges only that her placement of the funds into defendants' account created a fiduciary relationship. And although Olmos states in passing in her response brief that defendants were acting as escrow agents, she does not make this allegation in her complaint. Nor does she allege that an escrow agreement existed between the parties or that the JPA contained instructions with respect to how defendants were required to handle the funds, such that the duties of an escrow agent could be implied by the terms of the JPA.

Other courts have rejected the argument that transferring funds into a party's account, without more, creates an escrow agreement and its associated fiduciary duties. *See Alexander O&G, L.L.C. v. Nomad Land & Energy Res., L.L.C.*, 313 F.Supp.3d 794, 802 (S.D. Tex. 2018) (concluding that, absent an escrow agreement, funds wired to a law firm's IOLTA account in connection with a purchase and sale agreement failed to impose any fiduciary duties); *see also S. Avis Realty, Inc. v. Neece*, 2020 WL 3542272, at *5 (S.D. Tex. June 29, 2020) (rejecting, in the context of attorney immunity analysis, plaintiff's argument that "any attorney who allows a client to utilize the attorney's IOLTA Trust Account for purposes of a transaction automatically owes duties to the opposing party in the deal"). *Cf. Newington Ltd. v. Forrester*, 2008 WL 4908200, at *3 (N.D. Tex. Nov. 13, 2008) (Fish, J.) (imposing duties of an escrow agent, despite the absence of a formal escrow agreement, because defendant "received money accompanied by specific instructions on how to apply it"). Given that Olmos fails to allege any facts beyond the transfer of her funds to defendants' IOLTA account to support the inference that a formal fiduciary relationship existed between herself and defendants, the court holds that Olmos has failed to plead a plausible claim for breach of fiduciary duty. Accordingly, the court grants defendants' motion to dismiss Olmos' claim for breach of fiduciary duty.

V

The court grants Olmos' alternative request for leave to amend. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies

- 10 -

before dismissing a case, unless it is clear that the defects are incurable or plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002))). Within 28 days of the date this memorandum opinion and order is filed, Olmos must file a first amended complaint.

\* \* \*

For the reasons explained, defendants' motion to dismiss is granted in part and denied in part, and Olmos is granted leave to replead.

**SO ORDERED**.

April 28, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE